## APPLEBAUM v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1921.)

No. 2860.

1. **Criminal law ⬅600(1), 1052—Refusal of continuance held not to require reversal.**

   A conviction for crime will not be reversed because of refusal to grant a continuance on account of the absence of a witness, where no exception was taken, and where the court, with the district attorney's consent, permitted defendant to read to the jury as evidence a written statement of what the witness would have testified to if present, and the prosecution introduced no evidence to contradict the statement.

2. **Receiving stolen goods ⬅3, 7(2)—Intention to convert to own use is not essential, and need not be alleged.**

   Though a receiver of stolen goods cannot be convicted, unless he intended to deprive the owner of the possession of the goods, an intention by the receiver to convert the goods to his own use is not essential, and an indictment which charged that the possession was unlawful and felonious is not bad for failure to charge an intention to convert to defendant's use.

3. **Criminal law ⬅1038(3), 1056(1)—Exceptions and requests essential to review of incompleteness of instruction.**

   Where accused took no exceptions to the instruction and made no requests, and the charge was correct so far as it went, the conviction will not be reversed because the charge was not more explicit in places.

4. **Criminal law ⬅731—Functions of judge and jury are the same as in civil cases.**

   In the trial of a criminal charge, the respective functions of the judge and jury are the same as in civil trials, though the burden of proof is different.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Criminal law ☞935(1)—Right to set aside verdict on weight of evidence discretionary with trial judge.**

In criminal trials, as well as in civil, the right to set aside the verdict of the jury on the weight of the evidence is within the discretion of the trial judge, who heard the testimony while it was being presented to the jury.

**6. Constitutional law ☞316—Review is not essential to due process.**

All the requirements of due process of law in a criminal prosecution are met in the trial court, and Congress was not required by the Constitution to provide for any review in such cases.

**7. Criminal law ☞1159(3)—Reviewing court is limited to questions of law.**

The court reviewing a conviction for crime, is limited to questions of law, which include the question whether there is evidence to establish each essential element of the offense charged, but do not include the question whether the verdict is against the weight of conflicting evidence.

In Error to the District Court of the United States for the Eastern District of Illinois.

Ike Applebaum was convicted of having felonious possession of property stolen from an interstate shipment, and he brings error. Affirmed.

Certiorari denied, 255 U. S. ——, 41 Sup. Ct. 625, 65 L. Ed. ——.

C. B. Thomas, of East St. Louis, Ill., for plaintiff in error.

A. B. Dennis, of Danville, Ill., for the United States.

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge. Applebaum was convicted of having felonious possession of property stolen from an interstate shipment.

[1] Complaint is made of the court's refusal to grant a continuance on account of the absence of a witness. No exception was taken; and furthermore the court, with the district attorney's consent, permitted defendant to read to the jury as evidence a written statement of what the witness would have testified to if present. And as the government introduced no evidence to the contrary, the written statement stood as uncontradicted testimony.

[2] Though the indictment charged that defendant, knowing the property to have been stolen, had "unlawful and felonious possession," defendant contends that the indictment is bad because it failed to allege that he had the property in his possession "with the intention of converting it to his own use." No such conditioning element is found in the statute. Of course a person should not be condemned for having innocent possession of stolen property, for example, for the purpose of turning it over to the true owner or to the public authorities. But a knowing possession for the benefit of the thief or any knowing possession with the intent and effect of depriving the owner of his property would be a felonious possession.

[3] No exceptions were taken to the instructions, and defendant made no requests. It is conceded that the charge is correct as far as it goes, but the suggestion is offered that the jury may have been misled because the charge was not more explicit in places. If reversals

may thus be obtained, refraining to ask explicit instructions would become a sure anchor to windward against convictions.

Defendant's real reliance for reversal is on the alleged insufficiency of the evidence.

For the government the evidence was largely circumstantial. From a broken-open car and the absence of goods shown to have been loaded therein, the jury, we must assume from their verdict, inferred the theft. Railroad detectives testified to following wagon tracks from the plundered car into defendant's barnyard and to finding in defendant's barn property of the same kind and amount as that which had been stolen. When defendant, in his store at the front of the yard, was asked by the detectives concerning property missing from the railroad car, defendant, according to the detectives, was evasive until it became apparent that they knew of similar property in his barn. He then claimed that he had bought it of Weisman, a feed merchant. His attention was called to cinders among the feed. He then admitted that he had not obtained it from Weisman, but claimed that his horse and wagon had been taken during the night without his knowledge or consent, that he had found his rig in the barnyard in the early morning, that the feed was then in the wagon, and that he had put the feed in his barn to protect it. When asked why he had not notified the police, he replied that he had not had time, though the interview with the detectives was several hours after the feed had been put in the barn. And finally "he wanted to know if he couldn't square this thing up without its going any farther and without taking it up in court."

On behalf of defendant the jury had to consider his previous good reputation, the presumption of his innocence, his explicit denial of every incriminating circumstance against him adduced by the government, and the undisputed testimony (in the statement of the absent witness, the wife of the chief of police) that he had telephoned to the home of the chief of police soon after he found the feed in his wagon and before the detectives came to interview him, but without stating the purpose of the telephone call or leaving any message.

Defendant's proposition is that, if the members of an appellate court, after a careful study of the transcript of the evidence, entertain a reasonable doubt of the defendant's guilt, a reversal of the judgment must follow. Such may be the rule or method in some state tribunals; but in making that urge here we think defendant is misapprehending the respective functions of the jury, of the trial judge, and of the reviewing judges, in federal procedure. And since the same contention is being made with some frequency, we deem it advisable to state briefly those respective functions.

[4] When a conflict in evidence in a civil case is submitted to the jurors for their determination of the truth of the issues of fact, the trial judge instructs them that they cannot find for the plaintiff unless the preponderance of the evidence establishes the issues in the plaintiff's favor, and, in a criminal case, that they cannot find the defendant guilty unless on considering the presumption of innocence and weighing all the evidence they find that guilt is established beyond a reason-

able doubt. In each case, criminal as well as civil, the jurors are citizens who for the time are as fully public judicial officers as is the judge. Their oaths bind them to apply to the conflicting evidence the law given them by the judge, exactly as the judge's oath binds him to give the jurors a full and accurate exposition of the law applicable to the case. Between the criminal case and the civil case there is a difference in the law of presumptions and burden of proof; but when the judge has instructed the jurors as to the law, their duty to apply the law to the evidence is the same in either case. It is the exclusive function of the jurors to return a verdict; that is, a true saying of proven facts.

[5] If a defendant asks that a verdict be set aside because it is not supported by the required weight of evidence, his motion is addressed to the discretion of the trial judge. In order properly to exercise that discretion it is manifest that the trial judge, as well as the jurors, should attentively consider and weigh the evidence as it is being introduced, because in that respect he is sitting as the thirteenth juror. It is the exclusive and unassignable function of the trial judge to grant or refuse a new trial in cases of conflicting evidence.

[6, 7] If, a new trial having been denied, a defendant prosecutes a writ of error, he is availing himself of a grace granted by the lawmakers. Day in court, confrontation of witnesses, trial by jury, and all other elements of due process of law are provided in the trial court, and Congress was not compelled by the Constitution to provide for any review. The review that is allowed is limited to questions of law arising at the trial, such as sufficiency of pleadings, admissibility of evidence, and instructions to the jurors. It is also well established that the question whether every material allegation of a pleading is supported by evidence may, by proper motions, rulings, and exceptions, be made a question of law arising at the trial. But the review of that question of law is the exercise of a function that should not be confused with the nontransferable function of the trial judge in acting as the thirteenth juror.

In the present case we find that every material allegation of the indictment is supported by evidence; that the evidence, not violating any laws of nature, is credible; that it was for the jurors to decide what facts and circumstances were proved beyond a reasonable doubt, and for them to draw the inferences deducible therefrom (Keith v. State, 157 Ind. 376, 61 N. E. 716); and that, as the inference of guilt was fairly to be drawn from the circumstances of which there was evidence, the action of the jurors and of the trial judge in finding the truth to be in accordance with the government's evidence presents in federal procedure no reviewable question of law.

The judgment is affirmed.