LAWRENCE O. WILSON *v.* STATE OF INDIANA.

[No. 2-1075A273. Filed March 17, 1977.]

*Timothy J. Burns,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Wilson seeks to set aside his conviction for commission of robbery while armed.[1] He argues (1) that in-court identification by the victim, Ball, should not have been allowed because an unduly suggestive pre-trial line-up made the identification unreliable, and (2) that there was insufficient evidence to establish that he committed the robbery.

We affirm.

---

1. IC 35-12-1-1.

## I.

## THE LINE-UP WAS NOT UNDULY SUGGESTIVE

Wilson argues that the pre-trial line-up was unduly suggestive in that none of the four other line-up participants had black hair, or a moustache similar to his, and that he was the only one with a tattoo.[2]

The four additional line-up participants were white males of approximately the same age and build as Wilson. All had shoulder length hair, and two had facial hair. Wilson, however, was the only one with a tattoo on his arm. Since the robbery was committed by a person wearing a jacket, the fact that he was the only one with a tattoo is irrelevant. Although it might have been preferable to have someone else with black hair in the line-up with Wilson, we cannot say as a matter of law that the line-up was unduly suggestive.

Moreover, the circumstances of the robbery were such that any suggestiveness in the line-up was overcome. The store was well-lit, and Wilson stood about 3 feet from Mr. Ball, while he faced Mrs. Ball across the cashier's counter, holding a sawed-off shotgun no more than 2 inches from her stomach. Nothing obstructed Mr. Ball's view of the robber.

Even assuming *arguendo* that the line-up was unduly suggestive, the factors just enumerated form sufficient independent ground to establish the reliability of Ball's in-court identification of Wilson. *Parker* v. *State* (1976), 265 Ind. 595, 358 N.E.2d 110; *Swope* v. *State* (1975), 263 Ind. 148, 325 N.E.2d 193, *cert. den.* 423 U.S. 870.

---

2. Wilson also argues that he was denied counsel at the line-up. The record indicates that Wilson's then attorney was notified of the line-up, but was unable to be present. The attorney instructed the police to go ahead with the line-up without him. (This attorney was not Mr. Burns who represented Wilson at trial and who has taken this appeal.) This may have constituted a waiver of presence of counsel at the line-up. We need not rest our decision on that ground, however. Wilson did not assert lack of counsel at the time of the line-up in his Motion to Correct Errors, and has therefore waived the issue on appeal. Ind. Rules of Procedure, TR. 59(G), *Cole* v. *State* (1975), 167 Ind. App. 310, 338 N.E.2d 651, 654.

The trial court did not err in allowing in-court identification of Wilson by Ball.

## II.

### THE EVIDENCE IS SUFFICIENT TO SUSTAIN THE VERDICT AND JUDGMENT[3]

Wilson argues that Ball, the only eyewitness to testify, was so equivocal and uncertain in his identification of Wilson that his testimony had no probative value.

On the night of the robbery, Ball and his wife, the only two people in the store when it was robbed, were shown 50 to 75 pictures by the police. They indicated that one of those pictures looked like the robber, but said that it was not him. The next day, Sgt. Ashton returned to the store with the same group of photographs to which one of Wilson was added. Ball and his wife viewed these photographs outside the presence of the other, and both independently identified Wilson as the one who had committed the robbery. At the line-up two and one-half months later both again independently identified Wilson. At trial, Ball identified a black-and-white photograph of Wilson as being the man he had picked at the line-up, but qualified that statement, saying, "I can't say I'm sure."

We are well aware that "[s]ome of the most tragic miscarriages of justice have been due to testimonial errors . . . due to imperfect Recollection, with the occasional further complication of defective Perception and of Suggestion." *Baker* v. *State* (1956), 236 Ind. 55, 58, 138 N.E.2d 641, 643, quoting 3 WIGMORE, EVIDENCE § 786a, at 163 (3d ed. 1940). However, we do not agree with Wilson that *Baker* involved "a very similar set of facts."

Although Ball may have equivocated regarding a black-and-white photograph at trial, he was positive in his identi-

---

3. To the extent that the separate concurrence by Judge White espouses a prerogative of a trial judge to nullify a jury verdict by serving as a "thirteenth juror", the author of this opinion would reiterate the views contained in his dissenting opinion in *Collins* v. *Grabler* (1970), 147 Ind. App. 584 at 597-599, 263 N.E.2d 201 at 209-210.

fication of Wilson from a color photograph the day after the robbery, at a line-up two and one-half months later, and at the trial. As stated, the store was well-lit at the time of the robbery, and Wilson stood about 3 feet away from Ball. These facts, along with Ball's equivocations concerning the photographs, were matters for consideration by the jury. As our Supreme Court said in *Stinson* v. *State* (1974), 262 Ind. 189, 313 N.E.2d 699, 701:

> "It has often been observed by this Court and courts in other jurisdictions that personal identification evidence is doubtful at best and should be subject to close scrutiny. It would be naive to say that any person could be absolutely certain of the identification of another person whom they had never known previously and had observed only in a brief period of excitement and great tension. All testimony of such a nature must certainly be subject to extensive cross-examination in order that the jury may properly evaluate its content."

Ball was skillfully and thoroughly cross-examined by Wilson's defense counsel. The discrepancies in Ball's description affect only the weight of the evidence. *Perkins* v. *State* (1973), 156 Ind. App. 163, 294 N.E.2d 846.

In *Lottie* v. *State* (1974), 262 Ind. 124, 311 N.E.2d 800, 803, our Supreme Court stated:

> "Identifying testimony need not necessarily be unequivocal. Indeed, many convictions are predicated upon circumstantial evidence without any identifying testimony; but the totality of the evidence in all cases must be such as will permit the trier of facts, as reasonable men, to find guilt beyond a reasonable doubt."

Although there were some internal contradictions in Ball's testimony at trial, we cannot say that his testimony had no probative value in light of the totality of the identification evidence.

The judgment of the trial court is affirmed.

Lybrook, J. (participating by designation), concurs; White, J., concurs with separate opinion.

## Concurring Opinion

White, J.—I concur in the court's opinion because I agree that *from the appellate viewpoint* the evidence is sufficient to sustain the conviction. But I regret the majority's failure to address the trial judge's question whether, from his viewpoint as the thirteenth juror, the evidence is sufficient.

In overruling Wilson's motion to correct errors the trial court filed a memorandum which said, in part:

"Had I been the sole trier of fact, I would have acquitted on the sole issue of identity. However, it would have been a 'not proven', beyond a reasonable doubt, conclusion. Yet, I believed him guilty by a preponderance of the evidence.

"I let the verdict stand because I thought the jury's wisdom and its responsibility should not be set aside unless I believed the defendant innocent. . . ."

His memorandum also notes that "[t]he decisions do not define the quantum of proof or lack thereof which should govern the trial judge in passing upon the proof after a jury verdict of guilty." He invites us to speak to the problem.

It is true that virtually all of the recent Indiana cases which discuss the judge's power and duty with respect to requests for new trials on the ground that the verdict is against the weight of the evidence are civil cases. And these provide little or no guidance as to "the quantum of proof or lack thereof which should govern the trial judge" even in civil cases. However, the leading case of *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 666, 192 N.E.2d 486, 490, observes:

". . . that the duties evolving upon the trial judge when invoked by consideration of a motion for a new trial do in fact and law constitute him a thirteenth juror. Our case law in Indiana re the duty and responsibility of the trial court in such instances is paralleled by the case law governing the federal trial courts and in analogous situations the federal trial judge sits as the 'thirteenth juror'.[4]

The three federal cases cited are criminal cases. In the first,

4. 2 Villanova Law Review 323; *U.S.* v. *Parelius* (1949), 83 F.Supp. 617; *United States* v. *Robinson* (1947), 71 F.Supp. 9; *Applebaum* v. *United States* (1921), 274 F. 43-46.

*United States* v. *Parelius* (D. Hawaii, 1949), 83 F.Supp. 617, 618, the trial judge opined that: "If the judge sits as a thirteenth juror, as some authorities hold, then a verdict in which he could not concur should not stand if it is properly moved against."

In the second, *United States* v. *Robinson* (D.D.C. 1947), 71 F. Supp. 9, 14, Judge Alexander Holtzoff reviewed many federal authorities preliminary to concluding that although there was a *prima facie* case against Robinson the testimony of his alleged accomplices that he was not involved "far outweighs the somewhat dubious and conjectural evidence against him," and ordered a new trial. Obviously, Judge Holtzoff found the evidence of Robinson's guilt much less convincing that Judge Jacobs found the evidence of Wilson's identity as the perpetrator of the robbery. Consequently *Robinson* does not stand for the proposition that a trial judge should grant a new trial if he is convinced of guilt by a preponderance of evidence but not beyond a reasonable doubt. However, it does cite and quote with apparent approval from many cases including the following:

> ". . . Judge Denison, in *Bain* v. *United States,* 6 Cir., 262 F. 664, 666, made the following succinct comment:
>> " 'It is, of course, within the discretion of a trial judge to grant a new trial, if he thinks that, in a civil case, the jury disregarded the preponderance of the evidence, or that, in a criminal case, the evidence lacks that degree of persuasiveness without which there should be no conviction; * * *.' " (71 F.Supp. at 12.)

*Robinson* also quotes from *Applebaum* v. *United States* (7th Cir. 1921), 274 F. 43-46, which is the third federal criminal case cited in *Bailey* v. *Kain, supra.* Although *Applebaum* provides no direct answer to Judge Jacob's question it does state "that the trial judge, as well as the jurors, should attentively consider and weigh the evidence as it is being introduced, because in that respect he is sitting as the thirteenth juror". Read in connection with its prior statement that "in a criminal case [the judge instructs the jurors] that they cannot find

the defendant guilty unless on consideration find the presumption of innocence and weighing all the evidence they find that guilt is established beyond a reasonable doubt", it implies that the thirteenth juror should follow his own instruction as to reasonable doubt.

But in *Applebaum,* and in every other pertinent federal appellate opinion I have read, stress is laid on the proposition that the trial judge's duties and powers are discretionary and not reviewable by any appellate court. As *Applebaum* puts it:

> "If a defendant asks that a verdict be set aside because it is not supported by the required weight of evidence, his motion is addressed to the discretion of the trial judge. In order properly to exercise that discretion it is manifest that the trial judge, as well as the jurors, should attentively consider and weigh the evidence as it is being introduced, because in that respect he is sitting as the thirteenth juror. It is the exclusive and unassignable function of the trial judge to grant or refuse a new trial in cases of conflicting evidence.
>
> "If, a new trial having been denied, a defendant prosecutes a writ of error, he is availing himself of a grace granted by the lawmakers. Day in court, confrontation of witnesses, trial by jury, and all other elements of due process of law are provided in the trial court, and Congress was not compelled by the Constitution to provide for any review. The review that is allowed is limited to questions of law arising at the trial, such as sufficiency of pleadings, admissibility of evidence, and instructions to the jurors. It is also well established that the question whether every material allegation of a pleading is supported by evidence may, by proper motions, rulings, and exceptions, be made a question of law arising at the trial. But the review of that question of law is the exercise of a function that should not be confused with the nontransferable function of the trial judge in acting as the thirteenth juror." (274 F. at 46.)

The Indiana criminal cases touching the question are in accord. *Deal* v. *State* (1895), 140 Ind. 354, 360, 39 N.E. 930; *Barry* v. *State* (1918), 187 Ind. 49, 50, 118 N.E. 309; *Lowery* v. *State* (1925), 196 Ind. 316, 322, 147 N.E. 151, 148 N.E. 197; *Partlow* v. *State* (1929), 201 Ind. 207, 214, 166 N.E. 651. So are the early Indiana civil cases, as I understand them,

particularly *Christy* v. *Holmes* (1877), 57 Ind. 314, which *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 669, 192 N.E.2d 486, cites as "[t]he landmark case in Indiana respecting the duties of the trial courts and appellate courts". (See the pertinent paragraphs of *Christy* v. *Holmes, supra,* which are quoted in their entirety in both *Bailey* v. *Kain, supra* [135 Ind. App. at 669] and *Memorial Hospital* v. *Scott* [1973], 261 Ind. 27, 33, 300 N.E.2d 50, 54.) However, *Bailey* v. *Kain, supra,* and later civil cases, including *Memorial Hospital* v. *Scott, supra,* which holds that "an appellate court cannot assume the responsibility of weighing conflicting evidence in reviewing the trial judge's action on a motion for new trial" (261 Ind. at 33) hold that:

"The sole duty of an appellate court is to examine the record to see if:
  (a)  The trial court abused its judicial discretion;
  (b)  A flagrant injustice has been done the appellant; or
  (c)  A very strong case for relief from the trial court's ordering a new trial has been made by the appellant."
(261 Ind. at 33.)

But I find no Indiana case, civil or criminal, in which an appellate court has ever expressly held that the trial judge abused his discretion in granting or denying a new trial on a determination that a verdict was or was not contrary to the weight of the evidence.

I conclude that the trial judge, sitting as the thirteenth juror, should have granted Wilson a new trial because he thought, stated in the words of *Bain, supra,* "the evidence lacks that degree of persuasiveness without which there should be no conviction" (71 F.Supp. at 12). But, it is also my conclusion that we have no right to direct him to do so. However, I see no reason why we should not remand the case to him so that, if he now finds it advisable, he may reconsider his ruling.

NOTE.—Reported at 360 N.E.2d 1010.